UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GERONIMO ALMANZAR, PAUL BUNTON,
RAMON CABRERA, RAUL MARQUEZ, AND
VINCENT SIEDERMAN

                Index No.

              Plaintiffs,          **VERIFIED COMPLAINT**

    -against-              *Jury Trial Demanded*

THE CITY OF NEW YORK, and
THE NEW YORK CITY DEPARTMENT
OF CORRECTION,

              Defendants.
------------------------------------------------------------------x

Plaintiffs, GERONIMO ALMANZAR, PAUL BUNTON, RAMON CABRERA, RAUL

MARQUEZ, and VINCENT SIEDERMAN, by and through their attorneys, THE LAW OFFICE

OF STEVEN A. MORELLI, P.C., respectfully allege, upon knowledge as to themselves and

their own actions, and upon information and belief as to all other matters, as follows:

<u>NATURE OF THE CASE</u>

    1.    Plaintiffs, five former New York City Correction Officers, bring this action

against Defendants, The City of New York and The New York City Department of Correction

("DOC")(collectively, "Defendants"), seeking equitable relief, compensatory and punitive

damages, costs and attorneys' fees for deprivation of Plaintiffs' Constitutional rights to Due

Process, under the Due Process Clause of the 14th Amendment to the United States Constitution,

pursuant to 42 U.S.C. §1983.

    2.    This action by Plaintiffs is also for Defendants' violations of New York State

common law, for claims of negligent hiring, negligent supervision, defamation, negligent

infliction of emotional distress, and intentional infliction of emotional distress.

3.      In violation of Plaintiffs' Constitutional Rights to Due Process, the DOC deprived Plaintiffs of their property interests in their continued civil service employment as New York City Correction Officers at the Rikers Island Correctional Facility ("Rikers"), by discharging them after a fundamentally unfair and procedurally defective disciplinary hearing ("the OATH Hearing"), held between February 10, 2014 and June 24, 2014, before the New York City Office of Administrative Trials and Hearings ("OATH").

4.      In violation of Plaintiffs' Constitutional Rights to Due Process, during the pendency of the OATH action, the lead attorney representing the New York City Department of Correction ("DOC") improperly disclosed confidential information about Plaintiffs, including the DOC's transcripts of its investigatory interviews of the allegations against Plaintiffs, to the private attorney for the main witness testifying against the Plaintiffs.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Section 1391(b) because Defendants are located in this District and the events, actions, or omissions giving rise to the claims herein occurred in the Southern District of New York.

## PARTIES

7.      At all relevant times herein, Plaintiff, GERONIMO ALMANZAR, was a corrections officer employed by Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

8.      Plaintiff ALMANZAR had been employed by the DOC since December 2006. Plaintiff ALMANZAR had no prior disciplinary history and had received multiple acknowledgements and recognitions for his service.

2

9. At all relevant times herein, Plaintiff, PAUL BUNTON, was a corrections officer employed by Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

10. Plaintiff BUNTON had been employed by the DOC since April 2007. Plaintiff BUNTON had no prior disciplinary history and received Employee of the Month in February 2011.

11. At all relevant times herein, Plaintiff, RAUL MARQUEZ, was a corrections officer employed by Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

12. Plaintiff MARQUEZ had been employed by the DOC since February 2004. Plaintiff MARQUEZ has only one prior disciplinary incident, but has received employee of the month in May 2006 and received a letter of appreciation in January 2013.

13. At all relevant times herein, Plaintiff, VINCENT SIEDERMAN, was a corrections officer employed by Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

14. Plaintiff SIEDERMAN had been employed by the DOC since November 2006. Plaintiff SEIDERMAN had no prior disciplinary history and received a letter of appreciation in November 2009.

15. At all relevant times herein, Plaintiff, RAMON CABRERA, was a corrections officer employed by Defendant, THE NEW YORK CITY DEPARTMENT OF CORRECTIONS.

16. Plaintiff CABRERA had been employed with the DOC since December 2010. Plaintiff CABRERA had no prior disciplinary history.

17.     Defendant, CITY OF NEW YORK (the "City"), was, and continues to be, a

municipal corporation duly organized and existing under the laws of the State of New York, that

oversees the operation of the jails located on Rikers Island where the Plaintiffs were employed.

18.     Defendant, NEW YORK CITY DEPARMENT OR CORRECTIONS ("DOC")

manages and operates the Rikers Island Correctional Facility where the Plaintiffs were employed

as corrections officers. The City and DOC are responsible

### FACTUAL ALLEGATIONS

#### Background

19.     In or around April 2012, all five Plaintiffs were working as corrections officers at

Rikers.

20.     Over the course of their respective tenures, Plaintiffs proved themselves as hard-

working, capable, and dedicated employees.

21.     In or around April 2012, all five Plaintiffs worked under Captain Budnarine

Behari.

22.     In or around April 2012, Rikers housed an inmate named Robert Hinton, who was

being held during his pending prosecution for a charge of attempted murder.

23.     Hinton, a Blood Gang member, had a history of infractions during his stay at

Rikers, including weapons possession and assaults against four members of Riker's staff. One

specific infraction involved a prior incident on January 8, 2009, in which Hinton placed a

correction officer in a chokehold. The incident was detailed in Use of Force Report "UOF

#31/09."

4

24.     On April 3, 2012, an altercation between Plaintiffs and Hinton involved Plaintiffs'
use of force against Hinton, while they were transferring Hinton from the Rikers Mental Health
Unit for Assessment of Infracted Inmates ("MHAUII") to a new cell.

25.     Plaintiffs' version of the incident was that Hinton had provoked the use of force
when he placed Plaintiff Bunton in a headlock/chokehold and several of the Plaintiffs threw
punches at him in an effort to free Bunton from Hinton's physical attack.

26.     Hinton's version of the incident was that he was beaten without justification by
Plaintiffs, and he subsequently filed a lawsuit against Plaintiffs for assault in January 2013.

27.     Following the April 3, 2012 incident, a disciplinary OATH hearing was to be held
regarding the issue of whether the level of force used by Plaintiffs' was warranted.

28.     Specifically, the DOC charged Plaintiffs Siederman and Almanzar with using
unnecessary, impermissible, and excessive force. While they charged Plaintiffs Bunton,
Marquez, and Cabrera with failure to report the conduct of Siederman and Almanzar.

29.     All of the five Plaintiffs testified at the OATH hearing that the use of force was
justified because Hinton, once in the new cell, used deadly physical force against one of them by
placing the officer in a chokehold, and the use of force against Hinton by several of the other
officers was necessary to stop the deadly attack.

### Violation of Plaintiffs' Due Process Rights

30.     In or around April 2012, David Klopman, an agency attorney for the DOC, was
assigned as the lead attorney for DOC during the Plaintiffs' disciplinary OATH hearing.

31.     David Klopman began working as an agency attorney for the DOC in 1998 in the
DOC Trials Division. In 2004, Klopman became a supervising attorney for the DOC.

32.     The OATH hearing was conducted over the course of eight days, beginning February 10, 2014 and ending June 24, 2014. Judge Tynia D. Richard presided over the OATH hearing.

33.     Prior to the beginning of the proceedings of the OATH hearing, Robert Hinton had retained a private attorney, Ms. Conti-Cook, as his representative civil action against the City in connection with damages caused by the April 3, 2012 incident.

34.     In late 2013, Mr. Klopman learned that Mr. Hinton had retained Ms. Conti-Cook as his private attorney.

35.     Mr. Klopman knew Ms. Conti-Cook from her representation of another inmate from a prior disciplinary case.

36.     During the pendency of Plaintiffs' disciplinary OATH hearing, Mr. Klopman sent five e-mails to Ms. Conti-Cook between January 8, 2014 and March 21, 2014.

37.     An e-mail dated January 8, 2014 included transcripts of DOC staff members' investigatory interviews regarding the Plaintiffs' disciplinary case. These transcripts were confidential in that they had not yet been released to the public.

38.     Mr. Hinton testified in Plaintiffs' OATH hearing just five weeks after the January 8, 2014 e-mail was sent.

39.     On February 21, 2014 Mr. Klopman e-mailed Ms. Conti-Cook a series of internal DOC e-mails that 1) disclosed that Captain Behari had been discharged from the hospital following his injuries from the incident; 2) provided the address of the home Captain Behari's parents, whom he was staying with while recovering; and 3) disclosed that the DOC had not issued Behari a firearm. The e-mails also included a police report filed by Behari, in which Behari alleged that Hinton had threatened Behari near his home.

40.     On April 9, 2014, Mr. Klopman e-mailed Ms. Conti-Cook transcripts of the OATH hearing proceedings from the dates of February 10, 14, and 18, 2014. The transcripts in question had not yet been published, as the OATH hearing had not been completed.

41.     When the DOC found out about Mr. Klopman's actions, they removed him as lead attorney against the Plaintiffs.

42.     Despite the actions of the DOC in Mr. Klopman's removal, privileged and confidential information relating to Plaintiffs' disciplinary hearing had already been disclosed to Hinton's private counsel.

43.     Further, it was Mr. Klopman prior to his removal who had conducted the examination s of all of the inmate witnesses who had testified against the Plaintiffs.

44.     As the witnesses were examined by Mr. Klopman prior to his removal, their testimony was tainted.

45.     On September 25, 2014, Judge Richard issued her report on the Plaintiffs' OATH hearing.

46.     While Judge Richard did not grant Plaintiffs' a mistrial, she found that the February 21 e-mail contained confidential information which should not have been disclosed.

47.     Judge Richard further found that the interview transcripts contained in the DOC investigation file were confidential pursuant to §50-a of the Civil Rights Law and should not have been disclosed.

48.     Judge Richard further held that due to the improper disclosure of the confidential information, Mr. Hinton's testimony needed to be stricken from the record as it was possible that the information had been used to prepare Mr. Hinton for his testimony. However, Plaintiffs were

7

denied their constitutional right to face their accuser as the cross-examination of Mr. Hinton was also thrown out by Judge Richard.

49.     Upon information and belief, the deprivation of Plaintiffs' constitutional right to face their accuser in striking Hinton's cross-examination from the record was especially damaging as a result of the exculpatory evidence revealed during Hinton's testimony.

50.     Additionally, while Judge Richard struck Mr. Hinton's testimony from the record, she still heard the testimony and used it to form her decision on the case.

51.     Not only did Judge Richard improperly consider Mr. Hinton's testimony after striking it from the record, she corroborated it as well as Mr. Hinton's investigatory statement with the tainted testimony of witnesses who were examined by Mr. Klopman.

52.     DOC Commissioner Ponte, who had been appointed to his position the month after the disciplinary hearing began, accepted the findings and recommendation of Judge Richard, despite the flawed hearing, and terminated Plaintiffs on January 21, 2015.

53.     Plaintiffs' were made scapegoats by the heated public clamor or fear of public criticism regarding the history of violence at Rikers Island at the hands of a new DOC Commissioner.

54.     Due to the highly publicized nature of the disciplinary hearing, Plaintiffs' have faced severe prejudice in finding employment following the outcome of the hearing.

55.     On March 13, 2015, Judge John B. Spooner, an administrative judge found that Mr. Klopman's actions during the Plaintiff's pending OATH hearing warranted a forty-five day suspension from the DOC.

56.     Judge Spooner held that the records and information Klopman shared with Ms. Conti-Cook were unequivocally confidential pursuant to DOC rules as well as New York City and State law.

57.     Specifically, Judge Spooner found that Mr. Klopman had violated New York State Civil Rights Law § 50-a, the New York State Rules of Professional Conduct Part 1200, 1.1(a) and 1.6(a)(2), and New York City Department of Correction Rules 4.30.030, 3.55.060 and 8.05.050.

58.     Further, Judge Spooner found that Mr. Klopman's disclosures violated the New York City Conflicts of Interest Law (New York City Charter section 2604(b)(4)),which states that a public servant shall not disclose any "confidential information" concerning "the affairs or government of the city" obtained due to his employment.

59.     The confidentiality of Mr. Klopman's disclosures was further attested to by three other City attorneys, Ms. Mello, the DOC senior counsel and FOIL officer, Ms. Stackhouse, an attorney from the City Law Department, and Ms. Ajayi, a DOC attorney who acted as a discovery liaison with the City Law Department.

## AND AS FOR THE FIRST CAUSE OF ACTION

*Violation of Plaintiffs Procedural and Substantive Due Process rights Guaranteed by the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983)*

60.     Plaintiffs repeat and re-allege each and every allegation contained herein.

61.     At all times described herein, Plaintiffs possessed a clearly established property right and interest in their employment with the New York City Department.

62.     Defendants, while acting under the color of law, deprived the Plaintiffs of their due process rights under the Fourteenth Amendment to the United States Constitution.

63.     Defendants' actions in disclosing confidential information of Plaintiffs to the

9

private counsel of Hinton prior to, and during, Plaintiffs' disciplinary hearings are so egregious that they shock the conscience, and those actions deprived Plaintiffs of their substantial interest in their liberty and property interests.

64.     As a direct result of the Defendants' violation of the Plaintiffs' Fourteenth Amendment rights of procedural and substantive due process, Plaintiffs are suffering irreparable harm for which there is no adequate remedy of law.

65.     As a direct result of the Defendants' violation of Plaintiffs' Fourteenth Amendment rights of due process under the law, as alleged herein above, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages, costs and attorneys' fees.

## AND AS FOR THE SECOND CAUSE OF ACTION
### *Negligent Hiring and Supervision of Mr. Klopman*

66.     Plaintiffs repeat and re-allege each and every allegation contained herein.

67.     The DOC is liable for negligent hiring, training and supervision of Klopman.

68.     Mr. Klopman's unauthorized and unethical release of a series of confidential DOC e-mails, in violation of the New York State Civil Rights Law 50-a, the New York State Rules of Professional Conduct 1.1(a) and 1.6(a)(2), DOC rule 8.05.050 and the New York City conflicts of interest law, City Charter section 2604(b)(4), to the private attorney for their accuser, Hinton.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damages, injunctive relief,  and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiffs any other relief to which they are entitled, including but not limited to:

1.      Awarding reasonable attorneys fees and the costs and disbursements of this

action; and

2.      Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiffs demands a trial by jury.

Dated: Garden City, New York
          April 11, 2016

                                                    THE LAW OFFICE OF
                                                    STEVEN A. MORELLI, P.C.
                                                    JONATHAN A. TAND ESQ.,
                                                    *Attorneys for Plaintiff*
                                                    990 Stewart Avenue
                                                    Garden City, New York 11530
                                                    (516) 393-9151


                                                    JONATHAN TAND

11

<u>VERIFICATION</u>

STATE OF NEW YORK      )
                                ) ss.:
COUNTY OF NASSAU     )

       **Ramon Cabrera,** being duly sworn, deposes and states that deponent is a Plaintiff in the within action; that he has read the foregoing **Plaintiffs' Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

                                              Ramon Cabrera

Duly sworn to before me
this 30th day of March, 2016

NOTARY PUBLIC

LISA MARIE DESTEFANO
Notary Public, State of New York
No. 01DE6314907
Qualified in Suffolk County
Commission Expires November 17, 2018

<u>VERIFICATION</u>

STATE OF CONNNECTICUT    )
                             ) ss.:
COUNTY OF New Haven     )

      **Paul Bunton**, being duly sworn, deposes and states that deponent is a Plaintiff in the within action; that he has read the foregoing **Plaintiffs' Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

Paul Bunton

Duly sworn to before me
this 16 day of March 2016

NOTARY PUBLIC

TARA L. VOLGMUTH
NOTARY PUBLIC
MISSION EXPIRES MAY 31, 2019

<u>VERIFICATION</u>

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NASSAU    )

      **Geronimo Almanzar**, being duly sworn, deposes and states that deponent is a Plaintiff in the within action; that he has read the foregoing **Plaintiffs' Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

Geronimo Almanzar

Duly sworn to before me
this _6_ day of _APRIL_ 2016

NOTARY PUBLIC

GEORGE KATRAMADOS
Notary Public, State of New York
No. 01KA6017916
Qualified in Nassau County
Commission ...    2 20 18

<u>VERIFICATION</u>

STATE OF NEW YORK  )
                            ) ss.:
COUNTY OF NASSAU  )


     **Raul Marquez**, being duly sworn, deposes and states that deponent is a Plaintiff in the within action; that he has read the foregoing **Plaintiffs' Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

                                            _____
                                            Raul Marquez

Duly sworn to before me,
this ___ day of _A_pril 2016

_____
NOTARY PUBLIC

MAJID MOHAMMAD
NOTARY PUBLIC STATE OF NEW YORK
ROCKLAND COUNTY
LIC. #01MO6015180
COMM. EXP. 10/26/20__

VERIFICATION

STATE OF NEW YORK          )
                           )  ss.:
COUNTY OF NASSAU           )


**Vincent Siederman**, being duly sworn, deposes and states that deponent is a Plaintiff in the within action; that he has read the foregoing **Plaintiffs' Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

_____
Vincent Siederman

Duly sworn to before me
this 31 day of March 2016

_____
NOTARY PUBLIC

LISA MARIE DESTEFANO
Notary Public, State of New York
No. 01DE6314907
Qualified in Suffolk County
Commission Expires November 17, 20__