# Exhibit 1

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

BA
6/28/17
JE

PRESENT:   HON. JAMES E. d'AUGUSTE     PART 62

_____
Justice

Index Number : 100355/2016
ALMANZAR, GERONIMO
vs.
CITY OF NEW YORK
SEQUENCE NUMBER : 001
ARTICLE 78

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

The following papers, numbered 1 to _____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____

Answering Affidavits — Exhibits _____ | No(s). _____

Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

## DECIDED IN ACCORDANCE WITH
## ACCOMPANYING DECISION/ORDER

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____
FOR THE FOLLOWING REASON(S):

RECEIVED
JUN 28 2017
NYS SUPREME COURT - CIVIL
GENERAL CLERK'S OFFICE

# FILED
JUN 29 2017
COUNTY CLERK'S OFFICE
NEW YORK

Dated: 6/26/17                          _____ , J.S.C.
HON. JAMES E. d'AUGUSTE

1. CHECK ONE: ..................................................... ☒ CASE DISPOSED          ☐ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: .........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☒ OTHER

3. CHECK IF APPROPRIATE: ..................................................... ☐ SETTLE ORDER         ☐ SUBMIT ORDER

                                           ☐ DO NOT POST     ☐ FIDUCIARY APPOINTMENT     ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 62
------------------------------------------------------------------X
In the Matter of the Application of

GERONIMO ALMANZAR, PAUL BUNTON, RAUL
MARQUEZ, and VINCENT SIEDERMAN,

                               Petitioners,

For a Judgment Pursuant to Article 78 of the Civil
Practice Law and Rules,

                -against-

CITY OF NEW YORK CITY CIVIL SERVICE
COMMISSION, and CITY OF NEW YORK,

                          Respondents.
------------------------------------------------------------------X

**DECISION AND ORDER**
Index No. 100355/2016
Mot. Seq. No. 001



**Hon. James E. d'Auguste**

     This decision and order consolidates Motion Sequence No. 001 in *Almanzar, Bunton,*

*Marquez & Siederman v. City of New York City Civil Service Commission et ano*, Index No.

100355/2016 (Sup. Ct. N.Y. County); Motion Sequence No. 001 in *Behari v. Joseph Ponte,*

*Corrections Commissioner of The City of New York et al.*, Index No. 100345/2016 (Sup. Ct. N.Y.

County); and Motion Sequence No. 001 in *Cabrera v. City of New York City Civil Service*

*Commission*, Index No. 100372/2016 (Sup. Ct. N.Y. County), all pending before the undersigned,

for the purposes of disposition.[1]   This decision and order concerns three separate Article 78

petitions brought by six former New York City Department of Correction ("DOC") officers.  The

three petitions are based upon the same facts and involve similar issues of law.  The petitions seek

---

[1] For the purposes of consistency, citations in this decision and order refer to the petition, memoranda of law, and the exhibits filed in *Almanzar et al. v. City of New York City Civil Service Commission et ano*, Index No. 100355/16, unless otherwise indicated, as some of the same exhibits annexed to different petitions contain different pagination.

(1) a judgment annulling The City of New York City Civil Service Commission's ("CSC") decision to terminate them; (2) an order reinstating petitioners as corrections officers with full back-pay and benefits; (3) an order that their disciplinary matters be remanded to respondents for a further evidentiary hearing or a plenary hearing; or, (4) in the alternative, an order for a hearing pursuant to CPLR 7804(h). Respondents CSC, the City of New York ("City"), and Joseph Ponte, Corrections Commissioner ("Commissioner Ponte") cross-move, pursuant to CPLR 217, 7804(f), and 3211(a)(7), to dismiss the petition in each action on the grounds that they fail to state a cause of action.[2]

## Factual and Procedural History

The instant petitions arise from an incident that occurred at Rikers Island George R. Vierno Center ("Rikers GRVC") on April 3, 2012, in which all six petitioners were involved. At the time of the alleged incident, petitioner Budnarine Behari was employed by the DOC as a captain. Petitioners Geronimo Almanzar, Paul Bunton, Raul Marquez, and Vincent Siederman were employed by the DOC as officers. These five petitioners were tenured civil service employees. Petitioner Ramon Cabrera was also employed by the DOC as an officer, however, on the date of the incident, he was still considered a probationary employee.

On April 3, 2012, Behari was supervising the movement of a prisoner, Richard Hinton, from a unit on one floor of Rikers GRVC to a new cell on a different floor. Almanzar, Bunton, Marquez, Siederman, and Cabrera were under Behari's supervision during Hinton's movement, during which time two instances of impermissible and unnecessary use of excessive force allegedly occurred. The first instance was the impermissible use of force by carrying Hinton hog-tied to his new cell. Almanzar Petition Ex. B, at 8 (ALJ Report and Recommendation). The escort was

_____

[2] As a technical matter, not all respondents are named in each of the three petitions.

2

captured on surveillance video. *Id.* Ex. B, at 2. Due to this incident, Behari, Siederman, and Almanzar were charged with using impermissible force and Marquez, Bunton, and Cabrera were charged with failure to report said conduct. *Id.* Ex. B, at 8.[3] The second instance occurred inside of Hinton's new cell where he was badly beaten by some of the petitioners in these three actions. *Id.* However, this occurrence was not captured on surveillance video since it took place inside his cell and, as a result, competing narratives exist as to what transpired. *Id.* Ex. B, at 2. Behari, Siederman, and Almanzar were then charged with "using unnecessary, impermissible, and excessive force against Hinton inside his cell by punching and striking him while he was handcuffed[,] causing significant injuries." *Id.* Ex. B, at 8. All petitioners were charged with "falsely reporting what occurred, and conspiring to cover up the nature of the force used." *Id.*[4] While the charges and resulting discipline are disputed by petitioners, what is not disputed is "that there was a use of force that ended in Hinton being transported to Elmhurst Hospital where he was found to have severe facial trauma and a transverse process fracture in his back." *Id.*

I. The Administrative Hearing

Between February and June of 2014, over the course of eight days, Administrative Law Judge Tynia D. Richard ("ALJ Richard") conducted an administrative hearing, pursuant to Section 75 of the New York Civil Service Law ("CSL" or "Civil Service Law") with respect to petitioners' disciplinary charges. *Id.* Ex. B, at 1. The six petitioners each testified at the hearing on their own behalf. *Id.* Ex. B, at 2. The DOC presented, *inter alia*, testimony of thirteen witnesses, as well as

---

[3] Petitioners facing "failure to report" charges purportedly filed reports that contained intentional falsifications designed to justify the use of force against Hinton. *Id.* Ex. C.

[4] Almanzar, Marquez, Bunton, and Cabrera were also charged with "wearing prohibited leather gloves, which is a uniform violation" and "Behari, as supervisor, [was] charged with additional violations." *Id.*

3

surveillance video of the incident. *Id.* The hearing also included a tour of Rikers GRVC by ALJ Richard at the request of the DOC, which was unopposed by the six petitioners herein. *Id.*

During the administrative hearing, an event occurred that caused petitioners to claim prosecutorial misconduct. At the time of the hearing, Hinton was a plaintiff in a federal lawsuit, commenced in 2013, against the City for personal injuries he sustained due to the underlying incident in this case, entitled *Hinton v. City of New York et al.*, Index No. 13-CV-00651 (NRB) (S.D.N.Y.). *Id.* Hinton's federal case had been stayed pending a determination in the administrative hearing. *Id.* ALJ Richard found that the following facts were not in dispute: (1) on January 8, 2014, David Klopman, Esq., DOC counsel in the administrative hearing, e-mailed Hinton's counsel in the federal case transcripts of petitioners' "MEO 16" interviews,[5] five weeks before Hinton testified at the hearing; (2) on February 21, 2014, Klopman sent internal DOC e-mail communications to Hinton's counsel that indicated, *inter alia*, that Behari had been discharged from the hospital, the address of where he was recuperating, and a copy of a police report filed by Behari that alleged Hinton threatened him near his own home; and (3) on April 9, 2014, Klopman e-mailed unpublished transcripts from the administrative hearing from February 10, 15, and 18, 2014 to Hinton's counsel at her request despite knowing that the transcripts were not published because the hearing was still ongoing at that time. *Id.* Ex. B, at 3.

On May 23, 2014, petitioners moved for a mistrial of the administrative hearing or sanctions and dismissal of the DOC's petition on the grounds that Klopman engaged in misconduct

---

[5] An "MEO 16" interview is an interview conducted pursuant to Mayor's Executive Order 16, which permits a City agency to interview its employees in connection with allegations of misconduct. These interviews are routinely conducted by the DOC in investigations containing allegations of excessive force. Accordingly, any transcripts and/or recordings of such interviews are typically used as evidence in disciplinary proceedings. Sworn statements made as part of an MEO 16 interview may corroborate or, alternatively, contradict later statements made at an administrative hearing. *Id.* Ex. B, at 3 n.3.

and "created a conflict of interest, and caused irreparable prejudice to [petitioners] by disclosing confidential information to [Hinton's counsel]." *Id.* Ex. B, at 2. In the alternative, petitioners asked for Hinton's testimony to be stricken from the record as it was unclear whether the confidential information sent to his counsel affected his testimony in any way. *Id.* Ex. B, at 2, 7. ALJ Richard denied petitioners' motion for a mistrial, as well as their motion for dismissal, but granted their motion for sanctions. *Id.* Ex. B, at 2. Klopman was immediately removed from the case as soon as the DOC learned of his actions. *Id.* Ex. B, at 3.[6] ALJ Richard decided to strike Hinton's testimony from the record, "as an appropriate precaution," in order "to rid this proceeding of any taint." *Id.* Ex. B, at 7. She determined that "Hinton's testimony [was] not necessary to a prosecution of the claims asserted by the [DOC]; ample additional evidence exists in the record for that purpose, not the least of which is the statement that Hinton made to investigators hours after the use of force took place." *Id.*

In a sixty-eight page Report and Recommendation dated September 25, 2014, ALJ Richard found, with regard to the issues raised in the three Article 78 petitions, that Behari, Almanzar, and Siederman were "guilty of misconduct for engaging in an unnecessary, impermissible and excessive use of force and intentionally and maliciously causing serious physical injury to Mr. Hinton" (*id.* Ex. B, at 57) and that petitioners herein made "intentional misrepresentations of what occurred [as] designed to cover up their misconduct," and that such "false statements constitute misconduct" (*id.* Ex. B, at 59). Ultimately, ALJ Richard made the following ten findings and conclusions:

---

[6] In fact, disciplinary charges were filed against Klopman based upon his misconduct during the administrative hearing. Klopman's disciplinary charges were heard by an ALJ, he was found guilty of all charges, and was subsequently terminated. *Id.* Ex. C (*Dep't of Correction v. Klopman,* OATH Index No. 984/15 (Mar. 13, 2015), *modified on penalty,* Comm'r Dec. (Apr. 2, 2015), *aff'd,* NYC Civ. Serv. Comm'n Case No. 2015-0385 (June 17, 2015)).

1. Captain Behari, Officer Almanzar, and Officer Siederman are guilty of misconduct for using unnecessary, impermissible, and excessive force on inmate Hinton by punching and striking him while he was handcuffed and causing him serious physical injury;

2. Captain Behari is guilty of misconduct for instructing his staff to carry an inmate hog-tied, rather than have him transported on a gurney, as required;

3. Captain Behari is guilty of misconduct for verbally threatening an inmate with bodily harm;

4. Captain Behari is guilty of misconduct for transporting an inmate without enhanced restraints, as required;

5. Captain Behari is guilty of misconduct for failure to notify or request the assistance of a supervisor about an anticipated use of force;

6. Captain Behari is guilty of misconduct for failing to remove an inmate's handcuffs through the cuffing port, as required;

7. [The DOC] failed to prove that Officer Bunton, Officer Marquez or Officer Cabrera committed misconduct by failing to report the use of force inside Hinton's cell and the force used carrying Hinton hog-tied;

8. Captain Behari, Officer Bunton, Officer Marquez, Officer Siederman, Officer Almanzar, and Officer Cabrera are guilty of misconduct for submitting false reports and making false statements about the nature of the force used against inmate Hinton;

9. [The DOC] failed to prove that Captain Behari, Officer Almanzar, or Officer Siederman committed misconduct by conspiring to conceal the true nature of the force used; and

10. [The DOC] failed to prove that Officer Almanzar, Officer Marquez, Officer Bunton, or Officer Cabrera violated the uniform directive by wearing leather gloves.

*Id.* Ex. B, at 62. Based upon her findings, ALJ Richard recommended that the six petitioners herein should be terminated. *Id.* Ex. B, at 64, 67.

In her Report and Recommendation, ALJ Richard found that the weight of the evidence provided a reasonable basis to conclude that "Hinton was handcuffed during the use of force [in his cell]," which was the central issue to be determined at the administrative hearing. *Id.* Ex. B, at

6

52. The fact that Hinton was handcuffed and "incapable of defending himself" rendered the use of force unnecessary, impermissible, and excessive. *Id.* This is contrary to petitioners' contentions that Hinton was the aggressor such that he put Bunton in a chokehold and kicked Behari in the groin, which rendered petitioners' use of force necessary. *Id.* Nonetheless, ALJ Richard's finding with respect to whether Hinton was handcuffed is consistent with the statement made by Hinton to investigators prior to the administrative hearing, as well as statements by other inmates. *Id.* Ex. B, at 7, 21, 28-30, 39, 51, 55, 57. In making her findings, ALJ Richard noted that "[t]here is no video of what occurred inside Hinton's cell during the use of force, because inmate cells are not subject to surveillance. Thus, resolution of the charges rests in part upon the relative credibility of the witnesses, including [petitioners]." *Id.* Ex. B, at 21.

ALJ Richard articulated specific inconsistencies from the video, testimonial, documentary, and other evidence presented that directly contradicted certain aspects of petitioners' testimony and rendered other aspects of their testimony either not credible, or inexplicable, such as: (1) the fact that Hinton's hands showed no defensive injuries, which would have been expected if he had not been handcuffed and actually defended himself (*id.* Ex. B, at 49, 51); (2) that the physical injuries, as reported by petitioners and sustained by Hinton, are inconsistent with petitioners' individual accounts of the altercation that took place "in the cramped space of cell 6" (*id.* Ex. B, at 44-50); (3) that the surveillance video did not support the account given of how petitioners and Hinton entered and exited the cell (*id.* Ex. B, at 39-42); (4) Cabrera's testimony that he "looked startled or 'in shock'" during the incident was inconsistent with statements made by inmates outside of the cell, which indicated that Cabrera was talking and joking with the inmates at the time of the incident, and surveillance video (*id.* Ex. B, at 30-40); and (5) that petitioners' alleged injuries were either unsupported by any relevant evidence or no relevant or expected medical

attention was sought for said injuries (*id.* Ex. B, at 44-48).[7] *See id.* Ex. B, at 11-52.

II. The CSC Decision

In letters dated January 21, 2015, Commissioner Ponte accepted ALJ Richard's Report and Recommendation, and terminated all six petitioners. *Id.* Ex. G; Behari Petition Ex. G. Petitioners appealed to the CSC. *See id.* Ex. H; Behari Petition Ex. H. In a decision dated November 10, 2015, the CSC upheld ALJ Richard's determination to terminate each of the six petitioners from their employment with the DOC and stated that there was "no basis to modify the penalty imposed." Almanzar Petition Ex. H, at 2. The CSC affirmed all but two of ALJ Richard's factual findings. *Id.*[8] Two of the three members of the CSC review panel affirmed much of ALJ Richard's Report and Recommendation. *Id.* Ex. H, at 1-4. The third member, however, filed a dissent from the CSC decision, which stated, *inter alia*, that a mistrial should have been granted and that ALJ Richard's factual findings were not supported by the record, specifically that the record did "not support a finding of guilt for the most serious charges against [petitioners] and the lesser [charges] that should be sustained do not warrant termination." *Id.* Ex. H, at 5, 6.

As a result of the CSC's decision to uphold ALJ Richard's Report and Recommendation, petitioners filed the three instant Article 78 proceedings with this Court seeking to vacate the decision and the other relief discussed herein.

---

[7] For example, Bunton initially "made no mention of a chokehold or neck injury or neck pain" at the hospital that night, as claimed in his report the next day, but instead "wrote 'injury to left arm' as the nature of his injury." *Id.* Ex. B, at 47. Similarly, Behari told a doctor that he had been kicked in his knee, in contradiction with his testimony at the hearing that he had been kicked in the groin. *Id.* Ex. B, at 45.

[8] The two findings that the CSC overturned were (1) that Behari had improperly removed Hinton's handcuffs inside the cell rather than through the cuffing port, as this second finding was inconsistent with her determination that Hinton was beaten by Behari, Almanzar, and Siederman while handcuffed, and (2) that Behari was guilty "of instructing his staff to carry inmate Hinton 'hog-tied' rather than having him transported on a gurney," as it was unsupported by the evidence. *Id.* Ex. H, at 3.

## Discussion

In a typical Article 78 proceeding, the administrative decision will be upheld unless petitioners show that the "determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." CPLR 7803(3). However, as here, a penalty imposed under CSL Section 75 may be appealed by either filing an application with the local municipal commission that has jurisdiction over the matter or with the court, pursuant to CPLR 78. CSL § 76(1). CSL Section 76 further states that the results of a decision made by the CSC, on appeal, are "final and conclusive, and not subject to further review in any court." CSL § 76(3); *Brannon v. Mills*, 89 A.D.3d 536, 537 (1st Dep't 2011); *Yu v. City of New York*, 2014 WL 3349639, at *2-3 (Sup. Ct. N.Y. County July 2, 2014) (Hunter, J.). However, the Court of Appeals has set forth "an extremely narrow standard of review" of a CSC determination, which is different than the "arbitrary and capricious" standard of review for a typical Article 78 proceeding seeking judicial review of an ALJ's report and recommendation. *New York City Dep't of Envtl. Prot. v. New York City Civil Serv. Comm'n*, 78 N.Y.2d 318, 323 (1991); *see also Uddin v. NYC/Human Res. Admin.*, 81 A.D.3d 656, 657 (2d Dep't 2011). This "exceedingly limited" standard permits a court to review a CSC decision when the CSC "has acted illegally, unconstitutionally, or in excess of its jurisdiction." *New York City Dep't of Envtl. Prot.*, 78 N.Y.2d at 323-24. Accordingly, the appropriate standard to apply in this instance is the limited scope of judicial review articulated by the Court of Appeals.

Petitioners seek to annul the CSC decision on several grounds: (a) prosecutorial misconduct tainted the evidence presented at the administrative hearing and ought to have resulted in a mistrial; (b) ALJ Richard's remedy of striking Hinton's testimony was insufficient to remove

9

the taint; (c) in the absence of Hinton's testimony, there was an insufficient evidentiary basis for

ALJ Richard's conclusions, which relied in part on hearsay statements; and (e) petitioners were

deprived of due process.   To the extent that petitioners assert that ALJ Richard's Report and

Recommendation and the CSC's decision affirming the same were incorrect, this Court finds

petitioners' arguments to be without merit with respect to Almanzar, Bunton, Marquez, Siederman,

and Behari.   As such, respondents' cross-motions to dismiss the two petitions filed by Almanzar,

Bunton, Marquez, Siederman, collectively, and Behari are granted.   This Court reaches a different

conclusion with regard to the CSC's decision as it pertains to Cabrera.   Accordingly, the CSC's

decision is vacated as to Cabrera and remanded to the CSC for further review and respondents'

cross-motion in that action is denied.

As stated above, petitioners sought to appeal ALJ Richard's Report and Recommendation

to the CSC, as opposed to filing Article 78 petitions to appeal the same to the Court.   Accordingly,

pursuant to CSL Section 76(3), the CSC's decision is "final and conclusive, and not subject to

further review in any court."   Petitioners made their election of remedies and cannot now attempt

to circumvent the CSC's decision by appealing to this Court.   *Uddin*, 81 A.D.3d at 657; *Pasieka*

*v. New York City Transit Auth.*, 31 A.D.3d 769, 769 (2d Dep't 2006).   Thus, the applicable legal

standard bars judicial review of the CSC decision except for the limited purpose of determining

whether the CSC acted "illegally, unconstitutionally, or in excess of its jurisdiction" or in violation

of state "statutes or its own regulations."   *New York City Dep't of Envtl. Prot.*, 78 N.Y.2d at 322-

24; *see also Centeno v. City of New York*, 115 A.D.3d 537, 538 (1st Dep't 2014); *Horn v. New*

*York City Civ. Serv. Comm'n*, 43 A.D.3d 760, 761 (1st Dep't 2007); *Uddin*, 81 A.D.3d at 657;

*Pasieka*, 31 A.D.3d at 770.   While the petitions allege that respondents acted either in excess of

their jurisdiction or unconstitutionally in order to appeal to this Court, it appears that the majority

10

of the two petitions are dedicated to the impropriety of the administrative hearing by ALJ Richard rather than the CSC's decision. The narrow scope of the applicable judicial review prevents this Court from reviewing any alleged impropriety as related to ALJ Richard's Report and Recommendation. *See Horn*, 43 A.D.3d at 761. The petitions, even construed liberally in favor of petitioners, do not allege how or why the CSC's decision is unconstitutional, violative of state law, or that the CSC acted in excess of its jurisdiction. *See id.*; *Uddin*, 81 A.D.3d at 657. As such, judicial review of the CSC's decision is precluded. CSL § 76(3); *Uddin*, 81 A.D.3d at 657; *New York City Dep't of Envtl. Prot.*, 78 N.Y.2d at 322-24; *Centeno*, 115 A.D.3d at 538; *Horn*, 43 A.D.3d at 761.

Even the most relevant case cited by petitioners, *Horowitz v. New York City Civil Service Commission*, 2011 WL 1740198, 2011 N.Y. Slip Op. 31101(U) (Sup. Ct. N.Y. County Apr. 26, 2011) (Jaffe, J.), undermines petitioners' claims, to the extent they exist, that the CSC acted unconstitutionally or outside of its jurisdiction. In *Horowitz*, the court held the following:

> [p]etitioner's conclusory allegation that the trial officer's failure to give him an opportunity to produce witnesses and the [CSC's] rubber-stamping of NYCHA's determination and failure to consider facts and evidence, thereby acting illegally, unconstitutionally, or in excess of its jurisdiction, falls far short of demonstrating that respondent acted illegally, unconstitutionally, or in excess of its jurisdiction.

2011 WL 1740198, at *6. While petitioners allege that they were deprived of a witness, Hinton, who they specifically sought to preclude, and that there was no basis for their termination in the record, "[t]he [CSC's] determination is not judicially reviewable in the absence of allegations . . . sufficient to show that the [CSC] acted illegally, unconstitutionally or in excess of its jurisdiction." *Blount v. New York City Civ. Serv. Comm'n*, 12 A.D.3d 304, at *1 (1st Dep't 2004). As discussed in ALJ Richard's sixty-eight page Report and Recommendation, there was sufficient evidence, including surveillance tape, testimony, documentary, and physical evidence, that was reviewed by

11

the CSC in making its determination to terminate petitioners.  While petitioners rely on the dissenting opinion in the CSC decision, there was an adequate basis in the record for the conclusions reached by the CSC.  Petitioners' attempts to allege that ALJ Richard and the CSC were wrong in their determinations fail as the petitions do not allege that the CSC acted outside of any permissible scope.  Additionally, in light of the facts that gave rise to the proceedings disputed herein, "the penalty of dismissal does not shock [the Court's] sense of fairness." *Blount*, 12 A.D.3d at \*1.  Further, *Horowitz* explicitly stated that because "petitioner [did] not establish that the [CSC] acted illegally, unconstitutionally, or in excess of its jurisdiction, the penalty imposed by the [CSC] is likewise unreviewable." 2011 WL 1740198, at \*7; *see also Griffin v. New York City Dep't of Correction*, 179 A.D.2d 585 (1st Dep't 1992) (holding that when an employee appeals to the CSC, the penalty is not subject to judicial review).  To the extent that petitioners attempt to equate the arbitrary and capricious standard that would typically be used to review an Article 78 proceeding with an illegal or unconstitutional act or an act in excess of the CSC's jurisdiction, such an attempt was rejected in *New York City Department of Environmental Protection v. New York City Civil Service Commission*, 78 N.Y.2d 318 (1991).  *Horowitz*, 2011 WL 1740198, at \*6.

Moreover, even if this Court was permitted to review ALJ Richard's Report and Recommendation for similar defects, the same result would be reached.  While petitioners claim that their deprivation of Hinton, as well as the other inmates that submitted written statements, as witnesses interfered with their due process rights to fairly confront and cross-examine their accusers and their right to a fair hearing, this is simply not the case.  It is not disputed that DOC officers, as public employees, enjoy some level of procedural due process before they can be terminated. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).  However, the Supreme Court of the United States has held that a tenured civil service employee is entitled to a

12

pre-termination hearing, but generally, "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* Specifically, "oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*; *see Faghri v. Univ. of Conn.*, 621 F.3d 92, 100 (2d Cir. 2010).

Here, Almanzar, Bunton, Marquez, Siederman, and Behari were afforded sufficient due process in accordance with the above standard. The tenured petitioners were permitted to have an evidentiary hearing wherein they testified on their own behalf and saw the evidence that the DOC presented against them. Due to their participation in the hearing, it is evident that they received oral notice of the charges against them, which was followed by ALJ Richard's Report and Recommendation that clearly laid out the charges against them in writing and explained the evidence against them.[9]  Petitioners then challenged the findings in the Report and Recommendation through the administrative process that they elected to follow, which included appealing the DOC's disciplinary action taken against them to the CSC. Petitioners' purported inability to cross-examine Hinton was not a violation of their due process rights as the adverse testimony was stricken. With respect to the cross-examination of the inmates who submitted written statements, the Court of Appeals has rejected the production of all such witnesses as there is a "limited right to cross-examine adverse witnesses in administrative proceedings." *Gordon v. Brown*, 84 N.Y.2d 574, 578 (1994). In light of the various forms of evidence presented at the administrative hearing, the Court of Appeals "reject[ed] the blanket rule . . . that due process in

---

[9] Petitioners were also given written notice of the charges against them. *See* Almanzar Petition Ex. A ("Charges and Specifications"); Behari Petition Exs. A-C ("Charges and Specifications"); Cabrera Petition Ex. C ("Findings and Recommendations of Charges and Specifications").

every instance requires production of all such witnesses," and noted that "several courts have rejected similar challenges even in criminal proceedings." *Id.* at 579 (internal citations omitted). Accordingly, the Court finds the allegations made by Almanzar, Bunton, Marquez, and Siederman that they were not afforded due process to be without merit.

With respect to Cabrera, the record indicates that he was terminated after he was no longer a probationary employee.[10]   However, the CSC decision contains language indicating that Cabrera's termination was due to his probationary status. The CSC decision explicitly states that it "affirm[ed] Appellant Cabrera's termination, in part, because he was not a permanent employee when he failed to report the use of force inside the cell and was, therefore, subject to termination without further process." Almanzar Petition Ex. I, at 3-4.  The decision contains no language suggesting that any other grounds were considered in deciding Cabrera's termination.  Cabrera was impermissibly terminated due to a faulty conclusion that he was not protected by due process rights.  To be clear, it is a violation of the Civil Service Law to treat a permanent employee as deserving less process because the incident took place during his probationary period, which is what occurred in this instance.  If this were the case, and Cabrera's status was the sole ground for his termination, he should have been terminated while he was still a probationary employee.  In the absence of such a decision to terminate Cabrera during his probationary period, the fact that he was a probationary employee at the time of the incident is irrelevant.  As the CSC made an error in law, its decision regarding this petitioner is hereby vacated and remanded to the CSC for a new

---

[10] Cabrera was appointed to the DOC in December 2010.  Almanzar Petition Ex. B, at 63.  Cabrera was subject to a two year probationary period, during which time he could be fired without process. *See Swinton v. Safir*, 93 N.Y.2d 758, 762-63 (1999) (stating that probationary employees "may be dismissed for almost any reason, or for no reason at all").  The incident at issue in this proceeding occurred within that time period while Cabrera was still a probationary employee.  However, Cabrera's actual termination occurred well beyond that period, on January 21, 2015. *See* Cabrera Petition, ¶ 13, Ex. C.

determination consistent with this opinion.  Accordingly, respondents' cross-motion to dismiss Cabrera's petition is denied.

In light of the foregoing, it is hereby

ORDERED that the petition filed by Geronimo Almanzar, Paul Bunton, Raul Marquez, and Vincent Siederman is denied; and it is further,

ORDERED that respondents City of New York City Civil Service Commission and City of New York's cross-motion to dismiss the petition filed by Almanzar, Bunton, Marquez, and Siederman is granted; and it is further,

ORDERED that the petition filed by Budnarine Behari is denied; and it is further,

ORDERED that respondents Joseph Ponte, Corrections Commissioner of the City of New York, the New York City Civil Service Commission, and the City of New York's cross-motion to dismiss Behari's petition is granted.

ORDERED that the petition filed by Ramon Cabrera is granted to the extent that the CSC's decision, as it pertains to him, is vacated and remanded to the CSC; and it is further,

ORDERED that respondent City of New York City Civil Service Commission's cross-motion to dismiss Cabrera's petition is denied.

This constitutes the decision and order of this Court.

Dated: June 26, 2017

Hon. James E. d'Auguste, J.S.C.

**FILED**

JUN 2 9 2017

COUNTY CLERK'S OFFICE
NEW YORK

15