```
UNITED STATES DISTRICT COURT                        USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                       DOCUMENT ELECTRONICALLY
                                                    FILED
                                                    DOC#:
                                                    DATE FILED: 9-27-17
```

GERONIMO ALMANZAR, PAUL BUNTON,
RAMON CABRERA, RAUL MARQUEZ, and
VINCENT SIEDERMAN,

                      Plaintiffs,

          -against-

THE CITY OF NEW YORK and THE NEW
YORK CITY DEPARTMENT OF
CORRECTION,

                      Defendants.

16-cv-02696 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiffs, five former New York City Correction Officers, bring suit against the City of New York and the New York City Department of Correction, alleging claims under 42 U.S.C. § 1983 and New York State common law, arising out of the termination of their employment in January 2015. Defendants have moved to dismiss the Complaint for a variety of reasons, including *res judicata*, failure to comply with New York State notice of claim requirements, and failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

**I.    Factual Background**

      The following facts are taken from the allegations in Plaintiffs' Amended Complaint, which are presumed to be true for purposes of this motion to dismiss. *See* ECF No. 29 ("Am. Compl.").

      Plaintiffs Geronimo Almanzar, Paul Bunton, Ramon Cabrera, Raul Marquez, and Vincent Siederman each formerly worked as Correction Officers at the Rikers Island Correctional Facility

in New York, where they were employed by the New York City Department of Correction ("DOC"). Am. Compl ¶¶ 2, 6-15, 17. Prior to the incident that led to their terminations, none of the Plaintiffs, with the exception of Marquez, ever had been subject to discipline by the DOC. *Id.* ¶¶ 7, 9, 11, 13, 15.

On April 3, 2012, Plaintiffs were involved in an altercation with an inmate, Robert Hinton, while Plaintiffs transported Hinton from the Rikers Mental Health Unit for Assessment of Infracted Inmates to a new cell. *Id.* ¶ 23. Plaintiffs maintain that Hinton provoked their use of force by placing Bunton in a "headlock/chokehold." *Id.* ¶ 24. In response, several of the other Plaintiffs then punched Hinton in an effort to free Bunton. *Id.* Hinton claimed that the use of force was unprovoked and filed a civil suit against Plaintiffs in January 2013. *Id.* ¶ 25.

After the incident, the DOC initiated a disciplinary hearing in the New York City Office of Administrative Trials and Hearings ("OATH"). *Id.* ¶ 26. The DOC charged Siederman and Almanzar with using "unnecessary, impermissible, and excessive force," while Bunton, Marquez, and Cabrera were charged with a failure to report Siederman and Almanzar's improper conduct. *Id.* ¶ 27. David Klopman, a DOC attorney, handled the case. *Id.* ¶ 29. The OATH hearing lasted eight days, between February 20, 2014 and June 24, 2014, and was presided over by Administrative Law Judge Tynia D. Richard. *Id.* ¶ 31. At the hearing, Hinton and each of the Plaintiffs testified. *Id.* ¶¶ 28, 37.

At some point during the course of Plaintiffs' OATH hearing, it came to light that, immediately prior to, and during the course of, the OATH hearing, Klopman was in contact with Hinton's attorney in his civil suit and provided her with information regarding the hearing. *Id.* ¶¶ 32-36, 38-39. Included among the materials provided to Hinton's attorney were transcripts of investigatory interviews and transcripts of testimony from the OATH hearing. *Id.* ¶¶ 36, 39.

When the DOC found out about Klopman's conduct, it removed him as lead attorney on Plaintiffs' case. *Id.* ¶ 40. The following year, an administrative law judge recommended a 45-day suspension for Klopman. *Id.* ¶ 54.

Plaintiffs contend that the material Klopman disclosed to Hinton's attorney was confidential. *Id.* ¶¶ 36, 39. ALJ Richard agreed. *Id.* ¶¶ 45-46. She denied Plaintiffs' resulting motion for a mistrial, but, concerned about taint, struck Hinton's hearing testimony from the record because he had testified after Klopman provided the confidential materials to Hinton's attorney. *Id.* ¶ 47. While Plaintiffs appear to agree with the reasoning underpinning ALJ Richard's decision to strike Hinton's testimony, they assert that they were denied their "constitutional right to face their accuser" because ALJ Richard struck Hinton's testimony on cross-examination as well. *Id.* Plaintiffs further allege that, notwithstanding ALJ Richard's decision to strike Hinton's testimony, she considered it in reaching her decision and also corroborated Hinton's testimony with his pre-hearing statement to investigators and other testimony "tainted" by virtue of Klopman's role as the investigator. *Id.* ¶¶ 49-50.

DOC Commissioner Joseph Ponte adopted ALJ Richard's findings and recommendation, and terminated Plaintiffs' employment on January 21, 2015. *Id.* ¶ 51. Plaintiffs appealed their termination to the Civil Service Commission ("CSC"), which affirmed the decision by a two-to-one vote. ECF No. 31 (Declaration of Cassandra N. Branch ("Branch Decl.")), Ex. B (CSC Decision dated Nov. 11, 2015). Plaintiffs then filed Article 78 petitions in New York State Supreme Court challenging the CSC's decision. Branch Decl., Exs. D-E.

Plaintiffs contend that, as a result of the conduct alleged, they have been "made scapegoats" in the media reports surrounding violence at Rikers Island and have had difficulties finding new employment. *Id.* ¶ 52.

## II. Procedural History

Plaintiffs initiated this action by filing a Complaint on April 11, 2016. ECF No. 1. After the Court held a pre-motion conference regarding Defendants' anticipated motion to dismiss, Plaintiffs amended their Complaint. ECF No. 29. In the Amended Complaint, Plaintiffs allege two causes of action arising out of Klopman's and ALJ Richard's conduct during the OATH hearing: (1) violations of their due process rights pursuant to 42 U.S.C. § 1983; and (2) negligent hiring and supervision of Klopman by the DOC. Am. Compl. ¶¶ 59-67.

On November 1, 2016, Defendants moved to dismiss the Amended Complaint. ECF Nos. 30 (Motion), 31 (Branch Decl.), 32 ( "Defs' Memo."). Defendants assert a number of grounds for dismissal, arguing that (1) Plaintiffs' § 1983 claim is barred by the doctrine of *res judicata*; (2) Plaintiffs fail to state a claim for municipal liability under § 1983; (3) Plaintiffs did not file a notice of claim regarding their negligent hiring and supervision claim; and (4) Plaintiffs otherwise fail to state a cause of action. Defendants alternatively argued for a stay pending the outcome of Plaintiffs' Article 78 proceedings. Plaintiffs filed their response on January 6, 2017, ECF No. 36 ("Pls' Memo."), and Defendants submitted their reply on January 20, 2017, ECF No. 37 ("Defs' Reply").

While the motion to dismiss was pending, the New York State Supreme Court issued decisions in the pending Article 78 petitions. ECF No. 42 (Letter from Cassandra N. Branch), Exs. 1-2 (Supreme Court Decision dated June 26, 2017 ("Decision")). The state court dismissed the petition brought by Almanzar, Bunton, Marquez, and Siederman, but granted Cabrera's petition on limited grounds. In particular, the court found that the CSC had erred in affirming Cabrera's termination on the basis that he was a probationary employee at the time of the incident because he subsequently had become a permanent employee, and remanded Cabrera's case to the

CSC for a new determination. Decision at 14. With respect to Almanzar, Bunton, Marquez, and Siederman, the court held that their election of remedies precluded them from seeking review of the ALJ's report and recommendation under Article 78. *Id.* at 10-11. The court further held, in *dicta*, that petitioners "were afforded sufficient due process in accordance with the [federal constitutional] standard" during their hearing before ALJ Richard. *Id.* at 13.

After being informed of the state court decisions, the Court directed the parties to submit supplemental briefing regarding the impact, if any, of these decisions on this action and the pending motion to dismiss. ECF No. 43. Defendants submitted a response, but Plaintiffs did not. ECF No. 46 ("Defs' Supp. Reply"). The Court now considers the motion fully submitted.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the

5

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Department of Correction is Not Subject to Suit

As a preliminary matter, Defendants argue that the DOC must be dismissed from the case because it is not subject to suit. *See* Defs' Memo. at 15 n.6. Plaintiffs do not respond to this argument, but Defendants are correct, in any event. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter, ch. 17 § 396. Courts routinely dismiss actions against the DOC for this reason. *See, e.g., Morrison v. Dep't of Corr.*, No. 13-cv-2471 (JMF), 2014 WL 700477, at *2 (S.D.N.Y. Feb. 24, 2014); *Davis v. N.Y. City Dep't of Corr.*, No. 10-cv-0288 (ALC), 2012 WL 4468183, at *3 (S.D.N.Y. Sept. 25, 2012) (collecting cases). Therefore, Plaintiffs' claims are dismissed as against the DOC.

### II. Negligent Training and Supervision Cause of Action

Defendants make two arguments in support of their motion to dismiss Plaintiffs' negligent training and supervision claim. Defs' Memo. at 20-23. They argue that Plaintiffs failed to

properly file a timely notice of claim consistent with New York State law and that Plaintiffs have otherwise failed to state a cause of action. Because the Court agrees with Defendants that Plaintiffs' failure to file a notice of claim is a fatal deficiency, the Court will not address the substantive merits of this cause of action.

"[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Under New York law, a plaintiff asserting a tort claim against a "public corporation" must serve a notice of claim "within ninety days after the claim arises." N.Y. GEN. MUN. LAW § 50-e(1)(a). The notice must be sent to "the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered," *id.* § 50-e(3)(a), here, Corporation Counsel, *see* N.Y. C.P.L.R. § 311(a)(2). Proper service of a notice of claim is a "condition precedent" to the commencement of a suit. *See Hardy*, 164 F.3d at 793; *accord Scantlebury v. N.Y. City Health & Hosps. Corp.*, 4 N.Y.3d 606, 614 (2005) (service of wrong public entity merits dismissal of claim). Compliance with the notice of claim requirement is strictly construed and a plaintiff must plead his compliance or face dismissal of the claim. *Hardy*, 164 F.3d at 793-94.

Here, Plaintiffs do not allege service, timely or otherwise, of a notice of claim in their Amended Complaint. And, in opposition Defendants' motion to dismiss, Plaintiffs concede that they did not serve a notice of claim on Corporation Counsel. Pls' Memo. at 19. Instead, they argue that the Court should ignore this procedural failure because Defendants "had actual knowledge of the essential facts within the required time period" given that Klopman's wrongdoing came to light during Plaintiffs' OATH hearing. *Id.* at 19-20.

Plaintiffs argue that § 50-e(5) of the New York General Municipal Law allows this Court to consider Defendants' knowledge. This argument falls flat. Section 50e-(5) governs

7

"[a]pplication[s] for leave to serve late notice," and allows a New York State court, upon such an application, to "extend the time to serve a notice of claim." *See also* N.Y. GEN. MUN. LAW § 50-e(7) ("applications under this section shall be made to the supreme court or to the county court"). It does not allow a federal court to excuse this condition precedent for bringing a state law cause of action against a municipal entity in federal court. *See, e.g.*, *Tyk v. Surat*, 675 F. App'x 40, 43 (2d Cir. 2017) (plaintiff's "arguments concerning prejudice and actual notice are misplaced because [he] never sought leave in the first place"); *Barnes v. City of N.Y.*, No. 13-cv-7283 (GBD) (JLC), 2015 WL 4076007, at *20 (S.D.N.Y. July 2, 2015) (federal court has no jurisdiction to hear request for leave to serve late notice), *report and recommendation adopted*, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015). Therefore, Plaintiffs' claim for negligent training and supervision is dismissed for failure to comply with the notice of claim requirement.

### III. Section 1983 Cause of Action

Defendants also make a number of arguments in support of their motion to dismiss Plaintiffs' due process claim under § 1983. First, they argue that Plaintiffs' claim is barred by *res judicata* because Plaintiffs previously made these same arguments in their internal appeal. Defs' Memo. at 13-14.[1] Defendants next argue that Plaintiffs fail to state a claim because they were afforded sufficient process prior to their termination. *Id.* at 14-17. And, third, Defendants contend that, even if Plaintiffs' § 1983 claim otherwise survives, the City cannot be held liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 18-20. The Court finds that the CSC's determination is entitled to preclusive effect, but that, even if it were not, Plaintiffs have failed to state a claim under § 1983.

---

[1] In their opening brief, Defendants' preclusion argument focused exclusively on claim preclusion, not issue preclusion. Accordingly, the Court will disregard their reference to issue preclusion on reply and in their supplemental letter, particularly given that they otherwise continue to argue claim preclusion. *See* Defs' Reply at 6; Defs' Supp. Reply at 3.

## A. *Res Judicata*

"Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (alteration in original). For *res judicata* to apply, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

Defendants argue that the CSC's decision upholding ALJ Richard's report and recommendation precludes Plaintiffs from asserting their due process claim here because the CSC passed on that issue, albeit *sub silentio*. Defs' Memo. at 13-14. As an initial matter, "it is entirely possible for a court to consider and reject a particular claim presented to it without any express discussion of or allusion to that claim." *Sheffield v. Sheriff of Rockland Cty. Sheriff Dep't*, 393 F. App'x 808, 813 (2d Cir. 2010) (quoting *Winters v. Lavine*, 574 F.2d 46, 61 (2d Cir. 1978)) (internal quotation marks and alteration omitted). Accordingly, while the CSC did not explicitly discuss the due process implications of ALJ Richard's decision to deny Plaintiffs' motion for a mistrial while striking Hinton's testimony, Plaintiffs presented that question to the CSC, and, by affirming ALJ Richard's report, the CSC decided it. *See* Pls' Memo. at 9; Branch Decl., Ex. B.[2]

---

[2] "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). Here, the Court may consider ALJ Richard's report, which is incorporated by reference into the Amended Complaint, *see* Am. Compl. ¶¶ 44-50, and take judicial notice of the CSC's decision and the New York State Supreme Court filings in connection with Plaintiffs' Article 78 proceedings. *See, e.g., Trustees of the Bldg. Trades Educ. Ben. Fund v. Crana Elec., Inc.*, No. 10-cv-2065 (DRH) (WDW), 2011 WL 4434190, at *4 (E.D.N.Y. Sept. 22, 2011) (judicial notice of ALJ's orders); *Frith v. Hill*, No. 07-cv-5899 (JSR) (DCF), 2009 WL 3073716, at *16 n.10 (S.D.N.Y. Sept.

The CSC's decision is entitled to claim preclusive effect here. First, a brief word about administrative proceedings and their review in New York is necessary to provide context for the Court's discussion of *res judicata*. Section 76 of the New York Civil Service Law lays out the procedure for civil servants challenging their termination or other adverse employment action. It provides that an employee may appeal the adverse employment decision to either the CSC or the New York State Supreme Court as an Article 78 proceeding, not both. N.Y. CIV. SERV. LAW § 76(1). If the employee appeals to the State Supreme Court, Article 78 of the New York Civil Practice Law and Rules empowers the court to determine, among other things, whether a public officer failed to perform a required duty, proceeded in excess of his or her jurisdiction, or "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." N.Y. C.P.L.R. § 7803. If, on the other hand, the employee directs his appeal to the CSC, the CSC may "affirm[], revers[e], or modif[y]" the decision appealed from. N.Y. CIV. SERV. LAW § 76(3). The CSC's determination is considered "final and conclusive, and not subject to further review in any court." *Id.* Notwithstanding this language, CSC decisions remain subject to review by the State Supreme Court under a modified Article 78 standard. When reviewing a decision by the CSC, the State Supreme Court only evaluates whether the CSC "acted illegally, unconstitutionally, or in excess of its jurisdiction." *N.Y. City Dep't of Envtl. Prot. v. N.Y. City Civil Serv. Comm'n*, 78 N.Y.2d 318, (1991).

Turning back to Defendants' argument here, Defendants rely on the Second Circuit's decision in *Taylor v. N.Y. City Transit Auth.*, 433 F.2d 665 (2d Cir. 1970), for the proposition that Plaintiffs' § 1983 claim is barred by *res judicata* because the CSC's decision is entitled to claim

---

23, 2009) ("[J]udicial notice may be taken of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.") (citation and internal quotation marks omitted).

10

preclusive effect. However, both parties, it seems, misapprehend the import of *Taylor*. In *Taylor*, the Court of Appeals affirmed the district court's decision holding that the plaintiff's failure to raise his constitutional claim before the CSC—which, in turn, prevented the New York State Supreme Court from reviewing that claim when raised in an Article 78 proceeding—precluded the plaintiff from raising that constitutional claim in federal court. However, the district court's opinion did not require a finding that decisions by the CSC always have claim preclusive effect nor did the Court of Appeals endorse such a holding. Rather, the plaintiff's failure to exhaust his administrative remedies on that claim by raising his constitutional issue to the CSC was determinative. *Taylor v. N.Y. City Transit Auth.*, 309 F. Supp. 785, 792 (E.D.N.Y. 1970) ("[P]laintiff has simply failed to meet the reasonable requirement prescribed by the state that, having chosen to appeal to the [CSC], he accord that body an adequate opportunity to pass upon his claim.").

A few years later, the Court of Appeals confirmed this understanding of *Taylor*. *See James v. Bd. of Educ. of Cent. Dist. No. 1 of Towns of Addison et al.*, 461 F.2d 566, 571 n.11 (2d Cir. 1972). In *James*, the defendants attempted to rely on the district court's decision in *Taylor* to argue that the plaintiff's § 1983 claim was precluded as a result of the administrative decision upholding his employment termination. Unlike in *Taylor*, the plaintiff in *James* had articulated his constitutional claims during his administrative hearing, but did not then appeal the administrative decision to the New York State Supreme Court by way of an Article 78 proceeding. The Court of Appeals rejected the defendants' interpretation of *Taylor* as uniformly granting preclusive effect to administrative determinations. *Id.* It explained that interpreting *Taylor* in that way would put a plaintiff "in the paradoxical position of being barred from the federal courts if he had not exhausted administrative remedies and barred if he had." *Id.* at 571.

The facts of this case do not present any concern that Plaintiffs will be barred from the federal courts for exhausting their administrative remedies. Upon receiving an unfavorable decision from ALJ Richard, Plaintiffs then had the opportunity to present their case to the DOC Commissioner. After he terminated their employment, Plaintiffs had several options under § 76 of the Civil Service Law; they *chose* to appeal to the CSC. At that point, the CSC's determination became preclusive as to the issues Plaintiffs presented or could have presented. Here, Plaintiffs squarely presented their constitutional claims to the CSC. While Plaintiffs remained free to challenge the CSC's determination in New York State Supreme Court under limited Article 78 review, any further challenges to the ALJ's decision were foreclosed by the CSC.

### B. Plaintiffs Fail to State a § 1983 Claim

Even if Plaintiffs were not barred by *res judicata* from pursuing their § 1983 claim, the Court would find that they had failed to state a cause of action. The Due Process Clause of the Fourteenth Amendment provides that, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To state a cause of action for a violation of procedural due process, "a plaintiff must first identify a property right, second show that the [government] has deprived him of *that* right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (citation and internal quotation marks omitted, alterations in original).

First, the parties do not dispute that Plaintiffs have a property interest in their continued employment as Correction Officers. Defs' Memo. at 15; Pls' Memo. at 13.[3] The Court agrees.

---

[3] Cabrera was a probationary employee at the time of the incident, but became a non-probationary employee prior to his termination. Decision at 14 n.10. For purposes of argument, Defendants assumed that Cabrera had a property interest in his employment as well. And, as noted above, the New York State Supreme Court remanded Cabrera's case to the CSC as a result of their failure to consider his promotion to a permanent employee during the relevant time period. Therefore, the Court also will assume that Cabrera possessed a property right in his continued employment.

"A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Court of Appeals has recognized that § 75 of New York's Civil Service Law "gives covered employees a property interest in their employment." *Id.* at 314 (quoting *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir. 1994)) (internal quotation marks omitted).

Accordingly, the crux of the question is whether Plaintiffs were deprived of that property interest without due process. Again, the parties agree that Plaintiffs were given notice of the charges against them and received a trial-type hearing before ALJ Richard at which they were permitted to testify, take others' testimony, and present documentary evidence. Pls' Memo at 13; Defs' Memo. at 16; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."). Notwithstanding this "mountain of process," Defs' Reply at 3, Plaintiffs contend that there were errors of constitutional dimension during the hearing. Specifically, "it is Plaintiffs' contention that their due process rights would not have been violated had ALJ Richard granted the Plaintiffs' motion for a mistrial." Pls' Memo. at 14. Despite this articulation of the claim, it does not appear that Plaintiffs are arguing that they were entitled to a specific result, the mistrial. Rather, it appears they are challenging an alleged deprivation of their right to cross-examine Hinton by virtue of ALJ Richard's decision to strike Hinton's testimony—on direct and cross-examination—while still considering his pre-hearing statements to investigators. *See* Am. Compl. ¶¶ 47-50.

Assuming, without deciding, that ALJ Richard's decision to strike Hinton's testimony led to a violation of Plaintiffs' confrontation clause rights, Plaintiffs received sufficient post-

deprivation process through their recourse to both the CSC and the New York State Supreme Court via Article 78 petitions. Contrary to Plaintiffs' contention, they are, in fact, challenging as a "random, unauthorized act[]" ALJ Richard's decision to strike Hinton's testimony, not the "established state procedures" that presented them with the opportunity for notice and a hearing. *See Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996)) (internal quotation marks omitted). While courts have acknowledged that "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut," ALJ Richard was neither a "high-ranking official," nor the "ultimate decision-maker," and the Court therefore finds that her conduct falls on the "random and unauthorized" side of the line. *See Rivera-Powell*, 470 F.3d at 465. Within the strictures of the DOC disciplinary hearing process, a process with which Plaintiffs do not take issue, it is difficult to see how the DOC could have preempted through greater procedural safeguards the allegedly unconstitutional conduct—ALJ Richard's decision to grant Plaintiff's motion to strike Hinton's testimony, but not their motion for a mistrial.

Where, as here, a plaintiff is challenging the random, unauthorized conduct of a state actor, "the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Id.* Stated differently, "[t]he fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding. So long as state appellate remedies are available, a Section 1983 action is not an available vehicle for relief." *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 152-53 (2d Cir. 2010); *accord Whiting v. Old Brookville Bd. of Police Comm'rs*, 4 F. App'x 11, 12-13 (2d Cir. 2001) (plaintiff's challenge to evidentiary rulings by hearing officer was not complaint

about "the rules governing the process due under New York law," but about "the manner in which those rules were applied in his case"); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) (court assumed that ALJ's ruling was error of "constitutional magnitude," and found that availability of post-deprivation process satisfied due process); *Berlyavsky v. N.Y. City Dep't of Envtl. Prot.*, No. 14-cv-03217 (KAM) (RER), 2015 WL 5772266, at *17 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted as modified*, 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015), *aff'd*, 671 F. App'x 836 (2d Cir. 2016); *Longo v. Suffolk Cty. Police Dep't Cty. of Suffolk*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("combination of Section 75 and 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause") (collecting cases).

Following ALJ Richard's recommendation that Plaintiffs' employment be terminated, Plaintiffs were given numerous opportunities to challenge the allegedly constitutionally-deficient basis for her recommendation: they raised issues to the DOC Commissioner prior to their termination, and then had the choice to appeal either to the CSC or the New York State Supreme Court. They also were able to challenge the CSC's decision under Article 78. These subsequent avenues for relief constitute sufficient due process. Therefore, Plaintiffs' § 1983 claim for a violation of their procedural due process is dismissed.[4]

---

[4] While neither party addressed it in their briefing, Plaintiffs also allege that their substantive due process rights were violated. Their substantive due process claim appears to be based on Klopman's decision to disclose confidential information to Hinton's private counsel. *See* Am. Compl. ¶ 63. Defendants do not present any argument in favor of dismissing Plaintiffs' substantive due process claim; however, they have moved to dismiss the entire Amended Complaint. Accordingly, the Court considers whether Plaintiffs have stated a cause of action for a violation of their substantive due process rights. The Court finds that, although Klopman's conduct violated DOC rules and he was disciplined for it, his conduct is not, as a matter of law, "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint is granted.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: September 27, 2017
      New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**